JULIUS H. HAGEN, Respondent, *v.* THE BOWERY NATIONAL BANK, Appellant.

(GENERAL TERM, FIRST DEPARTMENT, NOVEMBER, 1872.)

A bank is liable to a *bona fide* holder in the ordinary course of business upon a forged check purporting to be drawn upon it, payable to order, and which it has certified.

The liability to such holder attaches upon the certification, and it is immaterial whether the indorsement of the check is that of the payee named, or whether a fictitious person is named as payee.

An advertisement of a forged note cannot affect a *bona fide* holder thereof unless brought home to him.

THIS was an appeal by the defendant from a judgment for the plaintiff entered upon a referee's report.

The action was to recover upon the acceptance or certification of a check, and the findings made by the referee were as follows :

" 1. That on the 26th day of March, 1868, a person representing himself to be P. Donovan presented to the defendants a check for $2,100, payable to P. Donovan or order, on the Bowery National Bank, purporting to be drawn by one John Sniffen, who was then a depositor with said bank.

" 2. That the defendants, upon presentation of the check to them, certified said check to be good, as alleged in the complaint, in the usual way of such certifications by the paying teller stamping the same upon its face, and writing his name thereon.

" 3. That shortly after said certification, the defendants learned from John Sniffen, the depositor, by whom said check purported to be drawn, that said check was never drawn by him, and the defendants thereupon inserted in four daily morning newspapers, which were issued on the morning of the next day, March 27th, 1868, a notice cautioning the public from negotiating said check.

" 4. That on the said 26th day of March a person representing himself to be P. Donovan presented said check to the

paying teller of the Sixth National Bank and asked the said bank to pay the same.

" 5. That previous to this day, the person so presenting said check had been introduced by a customer of the bank to said Sixth National Bank as P. Donovan, and in that name had opened an account in said Sixth National Bank, and in that name had deposited money and drawn checks upon it.

" 6. That the paying teller of said Sixth National Bank, upon the presentation of said check so certified, refused to pay the same ; but upon the same being indorsed by the person presenting the same with the name of P. Donovan, the payee therein named, the paying teller certified the indorsement to be correct.

" 7. That said person thereupon left the bank, and on the 26th day of March, 1868, took said check to the plaintiff, who was a dealer in gold and silver coin and bullion, doing business at No. 1 Wall street, in the city of New York, and offered to purchase gold coin with said check.

" 8. That this person being a stranger to the plaintiff, and it then being after bank hours, the plaintiff sent said check to a bank near his office to ascertain if the certification upon its face of the Bowery National Bank was genuine, and also the certificate of the Sixth National Bank to its indorsement. That the paying teller of the bank had left for the day, and the plaintiff was unable to and did not learn concerning the genuineness of said certifications. That thereupon the plaintiff refused to deliver the gold and take the check until he could verify these certifications, and requested the holder of the check to call the next day during banking hours.

" 9. That the said person called the next morning, the 27th of March, 1868, and again presented said check. That thereupon the plaintiff sent said check to a bank in the neighborhood, and learned that the certifications thereon were genuine.

" 10. That thereupon the plaintiff took the check and delivered to the person presenting it its full equivalent in gold.

" 11. That shortly afterward (this being on the 27th of March, 1868) the plaintiff sent said checks to the banking

house of the defendants at the corner of Canal street and the Bowery, and demanded payment, and was then for the first time informed that said check was a forgery, and payment of said check was refused.

"12. That the name of John Sniffen, as signed to the said check was in fact a forgery.

"13. That the plaintiff took said check without notice of the forgery of the drawer's name, and gave value for the same in good faith, and in the course of his business.

"14. That the plaintiff has never been paid by said defendants the amount of said check.

"15. That the interest thereon from the date of the presentation thereof to the date of this report is $470.33.

"And I report as a conclusion of law, that the plaintiff is entitled to judgment against the defendants for $2,570.33 and the costs of this action."

*James R. Marvin,* for the appellant.

*Franklin Brown,* for the respondent.

Present—LEONARD and GILBERT, JJ.

By the Court—GILBERT, J. The defendant certified the check in question as being good. The plaintiff took the check in the ordinary course of business for value and in good faith. There is nothing shown to impeach his title. The check turned out to be a forgery. It cannot be questioned that the bank is liable to make good its certificate by paying the check. (*Farmers' and Merchants' Bank* v. *Butchers' and Drovers' Bank,* 25 id., 146; *Price* v. *Neul,* 3 Burr., 1354; *Commercial, &c., Bank* v. *First National Bank,* 30 Md., 11.) The principle on which the liability rests is stated by HOLT, Ch. J., in *Hern* v. *Nichols* (1 Salk., 298), namely, that "seeing somebody must be a loser by this deceit, it is more reason he that confides in the deceiver should be a loser than a stranger," and has become an established rule of law in cases identical with this.

Whether the indorsement purporting to be that of the payee named in the check was genuine or not, or whether the person so named was a fictitious person, imperfectly appears. But it is immaterial whether it was one or the other. There can be no real payee of a forged instrument. As between the plaintiff and the bank the liability of the latter attached upon the check being certified, and as it is impossible to make title to money payable upon a forged check through an indorsement thereof, proof of the genuineness of the indorsement is unnecessary for that purpose. The evidence shows that the person from whom the plaintiff received the check went by the name indorsed thereon, and that the indorsement was made by him. This is quite sufficient to protect the plaintiff against any imputation of negligence or bad faith in taking the check.

The advertisement of the forgery not having been brought home to the plaintiff, can have no effect whatever upon his right to recover. (*Raphael* v. *Bank of England*, 17 C. B., 161.) For the reasons stated, we are of opinion that the judgment should be affirmed with costs.

